IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 5144 |
| | ) | |
| DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens, a professor of political science at Northwestern University, has sued the Department of the Army under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Stevens claims that the Army inadequately responded to two of her FOIA requests. As is common in FOIA cases, the parties have filed cross-motions for summary judgment. For the following reasons, the Court grants Stevens's motion in part and denies it in part and denies the Army's motion.

### Background

The following facts are largely undisputed. On June 28, 2023, Stevens submitted a FOIA request to the Army Corps of Engineers for records regarding Northwestern University's expansion of its campus into Lake Michigan around the 1960s. As relevant here, that request sought:

> [A]ll records tied to the proposal by Northwestern University to expand its campus into Lake Michigan. This includes but is not limited to correspondence to and from any individual(s) or entity, notes, memorandums, communications or press releases and underlying notes for

> preparation, reports (including interim reports), and evaluations in any medium. The time frame of this request is 1958 to 1963.

Def.'s Resp. to Pl.'s Stat. of Facts at 2–3. The Corps Chicago District conducted a search, closed the request, and sent Stevens "a final determination letter of 'No Records.'" Def.'s Stat. of Facts, Ex. A (McCreary Decl.) ¶ 3. In this case, Stevens does not challenge the adequacy of that search.

On February 7, 2024, Stevens submitted another FOIA request regarding the same subject, this time to the Army. The Court will refer to this as the lakefront expansion request. This second request was similar to the prior request to the Corps but specified that Stevens sought all records under the control of either the Army or the Corps:

> [A]ll records *under the control of the Army or the Army Corps of Engineers* tied to the proposal by Northwestern University to expand its campus into Lake Michigan. This includes but is not limited to correspondence to and from any individual(s) or entity, notes, memorandums, communications or press releases and underlying notes for preparation, reports (including interim reports), and evaluations in any medium *maintained by the Army Corps of Engineers*. The time frame of this request is 1958 to 1963.

Def.'s Resp. to Pl.'s Stat. of Facts at 2 (differences emphasized). Stevens received no response regarding this request until after she filed this lawsuit on March 14, 2025. The Army responded on April 15, 2025 by informing Stevens that it was administratively closing her request as a duplicate of her prior request to the Corps.

Separately, on April 26, 2024, Stevens's research assistant told her that she had seen a helicopter flying above the university's campus the day before, near an encampment of people who were protesting. That same day, Stevens submitted the second FOIA request at issue in this case, which the Court will refer to as the helicopter request, asking for:

2

> [A]ll records associated with the deployment of Army helicopters to the area of Lake Michigan proximate to Northwestern University in Evanston, IL, including but not limited to that of an Army Blackhawk helicopter documented as present in this area on April 25, 2024 at approximately 12:20 p.m. The number is G20642. Please see attached screenshots reflecting the helicopters [sic] identity and flight path. The records I am requesting include but are not limited to all internal and external communications prompting the helicopter's deployment, all communications conveying observations associated with this deployment, all video collected from the flight, and all findings, reports, and notes, including those stored on digital platforms reflecting the patrol. My request includes but is not limited to all records referencing Northwestern University activities, faculty, students, or officials. The time frame of this request is April 25, 2024 to April 26, 2024.

*Id.* at 4–5. Stevens requested expedited processing of this request under FOIA, emphasizing that "[t]he use of an Army helicopter for the apparent purpose of surveillance of a campus protest at Northwestern University is of great public interest, including because of the seeming violation of policies restricting the use of military for domestic disturbances and the chilling of First Amendment rights." Pl.'s Stat. of Facts, Ex. C at 4; Def.'s Stat. of Facts, Ex. B (Luton Decl.), Enclosure 1 at 3–4.

The Army did not respond to the helicopter request until May 2, 2025, after Stevens filed this lawsuit, when it referred the request to the Army National Guard Wisconsin FOIA Office. The Wisconsin Guard acknowledged receipt of the request in a letter to Stevens on May 12, 2025. Two days later, on May 14, 2025, the Wisconsin Guard issued a final response to Stevens stating that it failed to locate responsive records. It also explained that "[t]he type of records searched for are normally maintained by this office for at least 30 days" and that "FOIA applies only to existing records and there is no requirement to create a record in order to respond to a FOIA request." Def.'s Resp. to Pl.'s Stat. of Facts at 5–6. On June 13, 2025, Stevens submitted an internal appeal of the Wisconsin Guard's response. *Id.* at 6.

3

### Discussion

FOIA's fundamental purpose is to provide public access to government documents, "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "Toward that end, FOIA provides that agencies 'shall make . . . records promptly available to any person' who submits a request that '(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules,'" subject to enumerated exceptions. *Id.* (quoting 5 U.S.C. § 552(a)(3)(A)). The Act is interpreted in favor of disclosure. *Id.*

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, a plaintiff challenges the adequacy of an agency's search for records, the agency may meet its burden by showing "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Rubman*, 800 F.3d at 387 (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

As evidence, the agency may rely on a "reasonably detailed nonconclusory affidavit[]." *Id.* (quoting *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)). The affidavit must set forth enough information "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Id.* (quoting *Oglesby*, 920

F.2d at 68). That usually entails "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (quoting *Oglesby*, 920 F.2d at 68). An affidavit that meets these criteria is entitled to a presumption of good faith. *White v. U.S. Dep't of Just.*, 16 F.4th 539, 544 (7th Cir. 2021); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The FOIA requester can rebut the affidavit with "countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387 (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)) (internal quotation marks omitted). "Once both parties have made their case, 'if a review of the record raises substantial doubt [about the adequacy of the search], . . . summary judgment [in favor of the agency] is inappropriate." *Id.* (quoting *Iturralde*, 315 F.3d at 314) (internal quotation marks omitted). The question is only "whether the search was performed reasonably and in good faith," not "whether the agency *might* have additional, unidentified responsive documents in its possession." *Id.*

**A.     Lakefront expansion request**

The Army provides two arguments for why it is entitled to summary judgment regarding the lakefront expansion request. First, it contends that it properly closed the lakefront expansion request as a duplicate of Stevens's previous request to the Corps. The Army cites Army Regulation 22-55 ¶ 5-8(h) for its authority to do so. That regulation lists "[r]eason[s] for not complying with a request for a record as required by [FOIA]." *Id.* Subsection (h) provides as one reason: "The request is a duplicate request (that is, a requester asks for the same information more than once). This

5

includes identical requests received via different means (email, facsimile, mail, and courier) at the same or different times." *Id.* Stevens responds that the lakefront expansion request was not a duplicate because it was directed to a different agency— the Army instead of the Corps Chicago District. Stevens also challenges the validity of Army Regulation 25-55 ¶ 5-8(h), arguing that it exceeds the Army's statutory authority.

The Army's second argument is that "even if the request had *not* been duplicative of the request to the Corps, the Army would nevertheless have referred the request *to* the Corps." Def.'s Mem. in Supp. of Mot. for Summ. J. at 5. The Army points out that the Corps "has broad regulatory authority over the navigable waters of the United States, including Lake Michigan," and is therefore "the proper office to process a FOIA request about Northwestern's planned mid-century expansion into Lake Michigan." *Id.* Stevens responds that the Army cannot avoid its responsibility under FOIA by referring the request to the Corps and that such a referral would not constitute a reasonable search in light of her request.

The Court agrees with Stevens. Agency rules for handling FOIA requests—such as Army Regulation 22-55 5-8(h)—must meet the same reasonableness standard that applies to the adequacy of search procedures. *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). This applies to an agency's decision to refer a request. As a result, an agency's referral of a FOIA request to another agency "does not divest the original agency of responsibility to respond to the FOIA request." *In re Wade*, 969 F.2d at 247– 48 (citing *McGehee*, 697 F.2d at 1109). Thus both of the Army's arguments for how it met its FOIA obligations—because it was entitled to close the request as a duplicate or to refer the request to the Corps—depend on whether those actions are reasonable in

light of the lakefront expansion request.

Framed that way, neither of the Army's explanations are satisfactory. The lakefront expansion request differed from Stevens's prior request to the Corps because it was directed to a different agency (or portion of the agency) and therefore requested a search of different agency records. The lakefront expansion request was sent to the Army's FOIA email address, whereas the prior email was sent to an email address specifically for the Corps. Moreover, the text of the lakefront expansion request specified that Stevens was seeking "records under the control of the Army or Army Corps of Engineers," making clear that she was requesting a search of Army documents, not just Corps documents. Closing this request as duplicative of the request to the Corps, or referring the request to the Corps without searching Army records, reads out those key differences. And unless the Corps Chicago District is the only place likely to have responsive records—a claim that requires factual support beyond merely pointing to the Corps' general regulatory authority over Lake Michigan—a request directed to the Army asking for records under its control requires the Army to conduct its own search. The Army did not do so.

The Court therefore concludes that Stevens is entitled to summary judgment regarding the lakefront expansion request. The Army is ordered to conduct a reasonable search for records responsive to that request.

**B.     Helicopter request**

    **1.     Administrative exhaustion**

The Army raises exhaustion of administrative remedies as a threshold issue, pointing out that Stevens did not file an administrative appeal from the Wisconsin

Guard's response to the helicopter request before initiating this lawsuit. Stevens contends that because the Army failed to respond to her request within the statutory time limits, she has constructively exhausted her administrative remedies.

In general, a FOIA requester must exhaust administrative remedies before filing suit. *Hoeller v. Soc. Sec. Admin.*, 670 F. App'x 413, 414 (7th Cir. 2016). The exhaustion requirement, however, "is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing." *Oglesby*, 920 F.2d at 61. The FOIA provides that a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i). "If the agency has not responded within the statutory time limits, . . . the requester may bring suit," unless the agency "cures its failure . . . by responding to the FOIA request before suit is filed." *Oglesby*, 920 F.2d at 62–64.

Applying those principles to this case, administrative exhaustion does not bar Stevens's suit. It is undisputed that the Army did not respond to Stevens's helicopter request within the statutory time limits. Nor did it cure that failure before Stevens filed suit. Thus Stevens is deemed to have constructively exhausted her administrative remedies under 5 U.S.C. § 552(a)(6)(C).

The Army resists this conclusion by suggesting that "[i]t is not . . . clear that the Army and the Wisconsin Army National Guard should be treated as one agency for [exhaustion] purpose[s]." Def.'s Reply in Supp. of Mot. for Summ. J. at 8. It points out that "the issue being reviewed is whether the *Guard* performed an adequate search, not

whether the Army writ large performed an adequate search. That is why it would make sense to let the administrative process play out before litigating the adequacy of the Guard's search efforts." *Id.* at 9.

This argument ignores the fact that the helicopter request was initially directed to the Army. It ended up with the Wisconsin Guard because the Army referred it there. The Army's argument therefore works only if the exhaustion requirements are reset every time a FOIA request is referred to another agency. The Army does not point to any basis for doing so in the statute or case law, nor can the Court find any.[1] To the contrary, accepting the Army's interpretation would permit agencies to game FOIA's constructive exhaustion provision by passing the buck to a different agency, undermining the statute's purpose of requiring disclosure and transparency on the part of the government.

2. **Adequacy of search**

Having determined that Stevens constructively exhausted her remedies, the Court turns to the central dispute regarding the helicopter request: the adequacy of the search. As discussed above, the search was initially directed to the Army. As a result, the questions are whether the Army acted reasonably in transferring the request to the Wisconsin Guard and whether the Wisconsin Guard's search was reasonable in light of the request.

---

[1] The FOIA's constructive exhaustion provision contains a safety valve: "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). But the Army does not rely on that provision, nor has it shown exceptional circumstances.

The Army offers declarations related to both questions. First, Joyce M. Luton—the Army Headquarters Director for FOIA and Privacy Act Requests—explains that the Army processed the helicopter request "in the regular course of business" and took the following steps that led to referral to the Wisconsin Guard. Luton Decl. ¶ 3(b). Initially, the Army conducted a search based on the tail number that indicated that the helicopter "could possibly be the property of the Air Force." *Id.* ¶ 3(c). The Army then reached out to the Air Force, which stated that it did not own the helicopter. *Id.* Next, the Army "contacted Army Materiel Command . . . , Army National Guard, and the United States Army Forces Command . . . to identify the appropriate office that could have information about the helicopter's tail number." *Id.* ¶ 3(d). Based on the format of the tail number, the agencies were able to identify the Wisconsin National Guard as the potential appropriate office, to which the Army referre the request.

This affidavit supports, with reasonable particularity, the reasonableness of the decision to refer the request to the Wisconsin Guard. Stevens does not seem to challenge that decision.

Regarding the Wisconsin Guard's search, Colonel Douglas H. Moore—who provides legal guidance and reviews for FOIA requests to the Guard—explains that the Wisconsin Guard "conducted a search of all of its systems of records that were reasonably likely to yield the results, using terms and time frame identified in Plaintiff's search request." Def.'s Stat. of Facts, Ex. C (Moore Decl.) ¶ 6. He states, more specifically, that:

> [The Wisconsin Guard] conducted a thorough review of all physical records located in the flight operations office, the Aircraft Component Number (ACN) database, and the Central Army Flight Records System (CAFRS). We also searched all internal and external communications digital databases likely

>to contain information relevant to the helicopters' deployment during the identified timeframe, including databases containing communications conveying observations associated with such deployment . . . and all findings, reports, and notes, including those stored on digital platforms reflecting the patrol. These databases were searched because they were reasonably calculated to produce responsive records, as they are the designated repositories for flight operations documentation, aircraft maintenance and component data, official flight records, and communications pertaining to the helicopters' operational deployments. Given their purpose and function, <u>these systems are all locations reasonably likely to have responsive records.</u> . . . On May 14, 2025, the Deputy State Aviation Officer[] submitted a Record Search Certification attesting that no responsive records were found [from] a physical and visual search of . . . all filing cabinets and physical spaces at [the Army Aviation Support Facility 2 Flight Operations office] building . . . and the [State Army Aviation Office].

*Id.* ¶¶ 6–7. Moore also avers that:

>All search terms were based on the Plaintiff's FOIA request and included, in addition to the tail number, the following search terms: "Northwestern University," "Lake Michigan," "Northwestern University activities," "Northwestern University faculty," "Northwestern University students," "Northwestern University officials," "Lake Michigan and Northwestern University," "G20642 and Northern University," and "G20642 and Lake Michigan."

*Id.* ¶ 6.

According to Moore, applicable Army regulations provide that mission schedules and briefs "are normally maintained for at least 30 days," and "flight plans and general planning [are] to be on file for at least 15 days." *Id.* ¶ 8. Although the search did not turn up responsive documents, Moore attests that the Wisconsin Guard was "able to determine based on discussions with flight crews that the [helicopter] flight [at issue] was a routine training flight that followed established Visual Flight Rules (VFR) routes in the Chicago area," which "did not involve any specific surveillance or targeting of Northwestern University or Lake Michigan." *Id.* ¶ 9. Finally, he explains that "[t]here was no video recording of the flight because the installation of video equipment and or

11

in-flight video tapping [sic] is not authorized on the [helicopter] without a Proper Use Memorandum." *Id.*

Stevens offers five reasons why she contends the search was inadequate. First, she challenges the search terms used. She points out that they "include long strings, which would likely lead to excessively limiting the search, and do not include 'Northwestern,' 'demonstration,' 'students,' or 'campus.'" Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 12. She also claims that the Moore declaration is ambiguous regarding whether the agency searched for the tail number separately from the other terms, and what exact term was used for the tail number. More fundamentally, Stevens argues, her request was not limited to records referencing Northwestern University activities, faculty, students, or officials.

These arguments do not persuade the Court that the search was inadequate. At the outset, the Court does not see the ambiguity that Stevens does. The affidavit specifies, and the Army has since clarified, that the Army searched separately for "G20642." Next, it is possible that some of the Wisconsin Guard's string searches were superfluous. The touchstone of the adequacy inquiry, however, is reasonableness and good faith. The Wisconsin Guard's search terms clearly cover at least the following terms: "Northwestern University," "Lake Michigan," and "G20642." Though it is possible that Stevens's other suggested terms could have uncovered relevant documents, that missed possibility does not render the Army's search unreasonable. Additionally, there are intuitive reasons for why the Army may not have wanted to use generic terms like "Northwestern"—an ordinal direction likely to be used frequently in unrelated flight documents—instead of "Northwestern University." As for Stevens's

12

concern that the search improperly focused on Northwestern University, that focus simply reflects the fact that Stevens identified the relevant subject as "records associated with the deployment of Army helicopters . . . proximate to Northwestern University." Luton Decl., Enclosure 1 at 2. The Wisconsin Guard's search terms were reasonable in light of that request.

Second, Stevens argues that the Moore declaration does not specify what electronically stored records were searched. She specifically expresses concern that the Army did not search custodian emails or for communications with the Illinois governor and other authorities who might have ordered the deployment. Relatedly, her third argument is that "the agency's declaration is devoid of general description of how responsive records are maintained or any reasoning as to why the physical spaces searched were reasonably expected to produce responsive records." Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 14.

The Court is unpersuaded by Stevens's argument regarding the physical spaces because the Wisconsin Guard specified it searched *all* physical records located in its offices. But the Court finds that the affidavit is insufficiently clear and/or is conclusory regarding the Wisconsin Guard's search of electronically stored records. The affidavit states that the Guard searched "all internal and external communications digital databases likely to contain [relevant] information," but that is a conclusory statement that fails to provide sufficient detail at the summary judgment stage. The affidavit also states that the Wisconsin Guard searched the Aircraft Component Number database and the Central Army Flight Records System, but it is unclear whether those are some of the digital databases being alluded to. In short, without a clearer description of how

13

the Wisconsin Guard searched for electronically stored records, summary judgment in the Army's favor is inappropriate. *See Oglesby*, 920 F.2d at 68 (finding that summary judgment in the agency's favor was improper because the agency's affidavit did not describe with reasonable detail why the location searched was the only place likely to contain responsive documents).

Stevens's fourth argument is that the Wisconsin Guard cannot merely point to its policy for maintaining documents but rather "should explain what steps it took to preserve responsive records." Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 14–15. The problem with this argument is that it is relevant only to the extent that it shows that the Army's search was inadequate. *See Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982). And in this case, the Wisconsin Guard's failure to preserve responsive records was reasonable in light of the fact that it did not receive the referral until over a year after the flight at issue. Under its policy—which the Court has no basis to second guess—there would be no reason to maintain these documents for that long. The underlying problem is that the Army took so long to refer the request to the Wisconsin Guard. But the Luton Declaration explains that delay. Luton attests that the Army handles a significant volume of FOIA requests and has a significant backlog of more than 5,000 requests, processed on a first-in, first-out basis. She further explains that this problem has been exacerbated by a "turnover of personnel and staff shortages" over the last three years. Luton Decl. ¶ 5. These sworn statements are entitled to a presumption of good faith, and they suggest that any failure to preserve responsive documents was not unreasonable.

Fifth, the parties dispute whether responsive records—if any had been turned

over—would be exempted. Stevens is correct that this issue is not ripe at this time because no responsive records were identified in the first place, leaving the Court with no way to assess whether an exemption would apply.

## Conclusion

In conclusion, the Court denies the Army's motion for summary judgment [dkt. 10]. The Court grants Stevens's cross motion for summary judgment [dkt. 14] regarding the lakefront expansion request but denies it regarding the helicopter request. The Army is directed to conduct and complete, by no later than January 6, 2026, a search for records responsive to the lakefront expansion request. The Army is further directed to supplement, by no later than December 5, 2025, its affidavits regarding the helicopter request to provide additional detail regarding which specific electronic databases were searched, why they were chosen, and how those searches were conducted. The Court acknowledges that the current shutdown status of the government may require extension of these deadlines, depending on how long it lasts. In the interim, a telephonic status hearing is set for November 18, 2025 at 8:55 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 3, 2025