**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 5144 |
| | ) | |
| DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens, a professor of political science at Northwestern University,

filed this lawsuit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, against

the Department of the Army and the Army Corps of Engineers (ACE), a subsidiary

branch of the Army, seeking to compel responses to two FOIA requests.  Now, only one

request to the Army remains at issue.  The parties have filed cross-motions for

summary judgment.

**Background**

This is the second time that the parties have filed cross-motions for summary

judgment in this case.  *See Stevens v. Dep't of the Army*, No. 25 C 5144, 2025 WL

3072660 (N.D. Ill. Nov. 3, 2025).  The Court discusses only the facts relevant to the

present motions, and citations are to the materials for the present motions unless

otherwise specified.

On June 28, 2023, Stevens submitted a FOIA request to the Chicago District of

the Army Corps of Engineers (Chicago ACE) for "[a]ll records [from 1958 to 1963] tied to the proposal by Northwestern University to expand its campus into Lake Michigan" in the 1960s.  Def.'s Resp. to Pl.'s Stat. of Facts (PSOF) ¶ 5.  According to an affidavit from Jenna McCreary, a "Paralegal Specialist" at Chicago ACE, she responded to the request by attempting to search through "a digitized version of [a] microfiche"—PDF versions of a "physical collection of agency records[] ranging from the [early] 1890s to the mid-to-late 1970s."  Def.'s Stat. of Facts (DSOF), Ex. A (McCreary Decl.) ¶ 3. McCreary avers that the microfiche contains "hundreds of thousands of agency permit files," many of which cannot be searched for keywords because the originals were poorly scanned.  *Id.*  According to McCreary, her "only option" was to conduct a manual search.  *Id.*

McCreary attests that because the request did not provide a specific permit number, she needed to identify the permits within the relevant time frame (approximately 3,000 in total), locate which PDF document contained those permits, and manually review those files for relevance.  *Id.*  McCreary states that she reviewed "approximately 100 possible permit files using approximately 30-35 hours of search time" before asking Stevens if she could provide a permit number to make the search more feasible.  *Id.*  Stevens responded that she could not.  *Id.*  According to McCreary, the agency's regulatory section stated that "there were no other reasonable methods to search for responsive records without having known permit numbers."  *Id.*  On September 21, 2023, Chicago ACE sent a "final determination letter of 'No Records'" to Stevens.  *Id.*

On February 7, 2024, Stevens submitted another FOIA request regarding the

same subject, this time to the Army.  This request specified that Stevens sought "[a]ll records *under the control of the Army or Army Corps of Engineers* tied to the proposal by Northwestern University to expand its campus into Lake Michigan."  Def.'s Resp. to PSOF ¶ 12 (differences emphasized).  The Army administratively closed this request as a duplicate of Stevens's prior request to Chicago ACE.

On May 8, 2025, Stevens filed this lawsuit, naming the Army and ACE as defendants.  A month later, Stevens voluntarily dismissed her claims against ACE.  The Army and Stevens then filed cross-motions for summary judgment on whether the Army had complied with its FOIA obligations.  Regarding the request at issue here, the Army argued that (1) its regulations permitted it to close the request as a duplicate of Stevens's earlier request to Chicago ACE, and (2) even if the request were not a duplicate, the Army would have referred it to Chicago ACE anyway.

Stevens provided three responses.  First, she argued that her request to the Army was not a duplicate under the Army's regulations because it was "to a different Army component" than her prior request to Chicago ACE.  Pl.'s Opp'n to Def.'s First Mot. for Summ. J. at 5.  In Stevens's words, she was "not attempting to litigate the FOIA she submitted to ACE's Chicago District.  Rather, [she] submitted a new request for the Army to conduct its own . . . search for responsive records." *Id.*  Second, Stevens contended that the Army had not shown that referral to Chicago ACE would be a reasonable response to her request.  She pointed out that the Army did not "claim that other components or offices besides ACE's Chicago District do not have responsive records." *Id.* at 6.  To the contrary, Stevens argued that it was likely that "ACE headquarters," the "office of the Secretary of the Army," or "Army archives" contained

3

responsive documents.  *Id.* at 7.  Third, Stevens argued that referral in this situation would be *ultra vires*.  Again emphasizing that she "did not just submit the same FOIA request to the exact same agency," Stevens asserted that "accept[ing] the Army's arguments . . . would lead to absurd results, forever barring requesters from attempting to seek records from different offices within the same agency on the basis that the requests are duplicates."  *Id.* at 8–9.  Importantly, Stevens did not contend, in opposing summary judgment, that the Army should have to conduct its own review of the microfiche records that ACE had previously referenced.

On November 3, 2025, the Court issued an opinion agreeing with Stevens that the Army had not fulfilled its obligations under FOIA.  *Stevens*, 2025 WL 3072660, at *4. The Court started with the principle that an agency cannot avoid its responsibility to respond to a FOIA request by referring it elsewhere.  *Id.* at *3 (citing *In re Wade*, 969 F.2d 241, 247–48 (7th Cir. 1992)).  Rather, an agency's referral, by regulation or otherwise, must itself be a reasonable response to find relevant documents.  *Id.* (citing *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983)).  Next, the Court agreed with Stevens that her request to the Army differed from her prior request to ACE.  *Id.* Emphasizing that Stevens had submitted the request to the Army specifically and expressly stated that she sought "records under the control of the Army or Army Corps of Engineers," the Court determined that Stevens's request to the Army "was directed to a different agency (or portion of the agency) and therefore requested a search of different agency records."  *Id.*  With that understanding of Stevens's request in mind, the Court reasoned that "unless the Corps Chicago District [was] the only place likely to have responsive records"—a claim that the Army had not provided sufficient factual

4

support for—the Army needed to conduct its own search. *Id.* The Court therefore granted partial summary judgment in Stevens's favor and ordered the Army to "conduct a reasonable search for records responsive to [her] request." *Id.* at *4. Notably, the Court did not require the Army to re-review the ACE microfiche records; Stevens did not ask for that either in seeking or in opposing summary judgment.

Ten days after the Court's summary judgment ruling, however, Stevens's counsel emailed the Army's counsel, asking if "the Army and/or the national ACE office [would] be willing to utilize their (perhaps more enhanced) technologies to obtain records that the Chicago ACE office could not access in response to Stevens'[s] initial request in 2023?" PSOF, Ex. C (Post-SJ Request); *see* Def.'s Resp. to PSOF ¶ 16. The Army's counsel responded four days later: "I'll ask the Army and see what they think." Post-SJ Request at 3. The Army's counsel followed up the next day in the same email chain, asking to call before the parties' status hearing that day, to which Stevens's counsel agreed. *Id.* at 2. At the status hearing, the Army's counsel reported to the Court that based on his query, it sounded like the Army would try to help search the Chicago ACE microfiche records. One day later, on November 19, 2025, Stevens's counsel wrote, "Thanks again for letting me know that the Army is willing to try searching the digitized microfiche records." *Id.*

In a December 12, 2025 joint status report, the Army provided an update on its efforts to search the microfiche: "The Army . . . has investigated whether it can assist with the Chicago Army Corps of Engineers' prior unsuccessful effort to search for records . . . and has concluded that it cannot. Plaintiff has recently requested additional information from the Army about its efforts and the basis for its conclusion." Joint Status

5

Report (JSR), Dec. 12, 2025, dkt. 26 ¶ 2.  Regarding its search of locations other than the microfiche records, the Army reported that it believed that there were no "additional locations reasonably likely to contain [responsive] records" but that it was "continuing to assess th[e] question."  *Id.* ¶ 3.  On January 23, 2026, the Army reported that it had completed its search regarding other locations and provided Stevens with a declaration describing its efforts.  *See* JSR, Jan. 23, 2026, ¶ 1.  According to the Army, it identified only one box of potentially responsive records at the Federal Records Center in Chicago that, upon review, was non-responsive.  The parties subsequently filed the present cross-motions for summary judgment.

### Discussion

FOIA's fundamental purpose is to provide public access to government documents, "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).  "Toward that end, FOIA provides that agencies 'shall make . . . records promptly available to any person' who submits a request that '(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules,'" subject to enumerated exceptions.  *Id.* (quoting 5 U.S.C. § 552(a)(3)(A)).  FOIA confers jurisdiction on district courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).  The agency bears the burden of justifying its actions.  *Id.*

Here, the parties dispute whether the Army has adequately justified two of its

6

actions: (1) its decision not to conduct its own search of the Chicago ACE microfiche records, and (2) its decision not to produce any documents from the box it had identified as potentially containing responsive records. The Court addresses each in turn.

The first dispute concerns the adequacy of the agency's search efforts for records. *See Rubman*, 800 F.3d at 387. In these types of challenges, the question is whether the agency conducted its search in good faith, "using methods which can be reasonably expected to produce the information requested." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The focus on methodology means that an agency need not actually find and produce every responsive document, but it does require the agency to search all locations reasonably likely to contain responsive records. *See id.*; *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011).

Here, the parties do not dispute that the Chicago ACE microfiche records amount to a location reasonably likely to contain responsive records. The Army says that its search of other locations was unproductive in large part because responsive records would be stored in Chicago ACE. *See, e.g.*, DSOF, Ex. D ¶ 5; *id.*, Ex. E ¶ 5. It argues, however, that it need not search the microfiche records because the first round of summary judgment motions established that "the only remaining question [was] whether the Army might have *other* records responsive to Stevens's FOIA request." Def.'s Reply in Supp. of Mot. for Summ. J. at 1.

The Army relies in part on the law-of-the-case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Flynn v. FCA US LLC*, 39 F.4th 946,

953 (7th Cir. 2022) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  But that doctrine, strictly speaking, does not apply here, as the Court did not affirmatively decide during the earlier summary judgment briefing that the Army did not need to try its own search of the digitized microfiche records.

There is a reason for that, however:  Stevens took that issue off the table.  By the time of the first round of summary judgment motions, Stevens had dismissed ACE as a defendant.  And when the Army moved for summary judgment, Stevens did not contend that the Army should have to conduct its own search of the ACE microfiche records.  In fact, she specifically said that she was not trying to relitigate the microfiche records issue.  Pl.'s Opp'n to Def.'s First Mot. for Summ. J. at 5.  Rather, she successfully opposed summary judgment by arguing that the Army should have to search *other places* for responsive records.  *See, e.g., id.* at 9 (arguing that FOIA should not "bar[] requesters from attempting to seek records from *different* offices") (emphasis added); Pl.'s Reply in Supp. of First Cross-Mot. for Summ. J. at 4 (analogizing this case to a situation where a request is submitted to one agency, then to a different agency).  The Court agreed.  It denied the Army's summary judgment motion on the basis that the Army could not reasonably treat Stevens's request as a duplicate of her prior request to Chicago ACE.  Rather, the Court said, the request to the Army "was directed to a different agency (or portion of the agency) and therefore requested a search of *different* agency records."  *Stevens*, 2025 WL 3072660, at *3 (emphasis added).  And the Court reasoned that "unless the Corps Chicago District is the only place likely to have responsive records . . . a request directed to the Army asking for records under its control requires the Army to conduct its own search."  *Id.*

8

Stevens's attempt to (again) move the goalposts may not fit neatly within the law-of-the-case doctrine, but it makes a good case for application of the doctrine of judicial estoppel. The rule of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). That is the situation here. Stevens successfully avoided summary judgment earlier by saying she was not asking the Army for a do-over of the microfiche search, but she now wants to avoid summary judgment by saying exactly the opposite.

One might object that Stevens broached this with the Army after the earlier summary judgment motion was denied and that the Army did not throw her out on her ear but instead agreed to give it a go. That doesn't avoid judicial estoppel, however: the doctrine is directed to a litigant's dealings with the court, not discussions between opposing counsel.[1] *Id.* at 749–50.

Stevens alternatively proposes that the Court should order the Army to grant her direct access to the microfiche records. That is a variation of her attempt to revive the issue she gave up in the earlier round of summary judgment. But even if this were not the case, the Court sees no basis in FOIA or the caselaw to grant a request of this sort. Stevens cites *Oglesby*, where the D.C. Circuit held that an agency may satisfy its FOIA obligations by making records available for in-person viewing, *Oglesby*, 920 F.2d at 70, and a 1996 amendment to FOIA requiring agencies to produce responsive records "in any form or format requested by the person if the record is readily reproducible by the

---

[1] That aside, Stevens's exchange with the Army after the earlier summary judgment ruling does not get her anywhere, as the Army reported back that there was nothing more that it could do beyond what ACE had already done.

agency in that form or format," 5 U.S.C. § 552(a)(3)(B). Neither supports Stevens's position that a requester may compel in-person access to *potentially* responsive records that the agency is unable to review. As the Army points out, granting Stevens's request would give her access to material that the agency has not had the opportunity to redact under applicable statutory exemptions.[2] For these reasons, the Court rejects Stevens's alternative proposal. The Army is entitled to summary judgment with respect to the microfiche records.

The Court turns to the parties' second dispute, which concerns whether the Army has adequately explained what happened to the box of potentially responsive records from its search of locations besides Chicago ACE. The Army has submitted an affidavit from Joyce Luton in which she avers that the Army searched two records systems "using the terms 'Northwestern University' and variations of this term" as well as the terms "Lakefill," "Lakefill project," and "shoreline." DSOF, Ex. C ¶ 5. According to Luton, this search identified "one box at the Federal Records Center in Chicago, Illinois which appeared to contain responsive records." *Id.* ¶ 6. Luton attests that the box was "manually reviewed by [her] staff," who "found no responsive records." *Id.*

Stevens does not challenge the adequacy of the Army's search that identified the box as potentially responsive. Instead, she argues that the Army has not sufficiently explained why, having indicated that the records in the box might be responsive, it

---

[2] Stevens suggests that the Court could order her to identify any records that may be potentially responsive for the Army to review for exemptions. But that does not help the situation here, where records have already been identified as potentially responsive— those in the microfiche—but the problem is that they might not be feasible to review for exemptions. Stevens also proposes that the Court enter a protective order to forbid Stevens from further disclosing exempt information. But material exempt by statute need not be disclosed at all.

ultimately concluded they were not. The Army contends that "one can easily imagine *any* of the search terms the Army employed . . . yielding records that relate to Northwestern, the Chicago lakefill, or the Chicago shoreline but that do not relate to [Stevens's request regarding] 'the proposal by Northwestern University to expand its campus into Lake Michigan.'" Def.'s Reply in Supp. of Mot. for Summ. J. at 3. The Army's point is well-taken, but the affidavit does not say that is what happened. It says only that the Army found no responsive records, which is not the kind of "reasonably detailed explanation[] of why material was withheld" that enables the Court to determine at summary judgment that the Army is not improperly withholding responsive records. *See Nat'l Immigr. Proj. of the Nat'l Laws. Guild v. U.S. DHS*, No. 11 Civ. 3235 (JSR), 2012 WL 6809301, at *6 (S.D.N.Y. Dec. 27, 2012).

To be sure, agencies generally need not justify why nonresponsive documents are withheld. *See Competitive Enter. Inst. v. U.S. EPA*, 12 F. Supp. 3d 100, 114 (D.D.C. 2014); *Leopold v. CIA*, 177 F. Supp. 3d 479, 489–90 (D.D.C. 2016). And for good reason: because every search entails sifting through a significant number of nonresponsive documents, requiring agencies to justify nonproduction of each document, as if they were being withheld under statutory exemptions, would almost always be unduly burdensome. On the other hand, it would undermine FOIA's policy of disclosure if a FOIA requester could never challenge an agency's determination that certain records are nonresponsive. Erroneous responsiveness determinations cause the same result as erroneous application of the statutory exemptions—improperly withheld records. *See Nat'l Immigr. Proj.*, 2012 WL 6809301, at *6. Here, Stevens has challenged the Army's responsiveness determination for one particular box of

11

documents, and the Army's current affidavit provides only the bottom-line conclusion that the records were not responsive. Given the specificity of the parties' dispute, it makes sense to require the Army to provide more of an explanation to win summary judgment.

Because the sole problem at this stage is insufficient detail in the affidavit (as opposed to a defect in the adequacy of the agency's search), the Army may supplement its motion for summary judgment with a more detailed affidavit. A reasonably detailed explanation in this context should not require much more from the Army. As it points out, the search method used to identify the box obviously could have produced non-responsive records. The Army need not go into detail about why every document in that box was not responsive. It could, for example, provide an affidavit just generally describing the subject matter of the documents. It could also describe how the manual search was conducted—such as what information the reviewers had about the request, any methodology or additional criteria that they used, or what they looked for—and aver that the described manual search of all of the documents in the box revealed that none were responsive. *See Leopold*, 177 F. Supp. 3d at 489.

### Conclusion

In conclusion, the Court denies Stevens's motion for summary judgment [dkt. 38]; grants the Army's motion for summary judgment [dkt. 35] with respect to the ACE microfiche records; and defers the remainder of the Army's motion as it relates to the box of records located at the Chicago Federal Records Center. The Army is given leave to submit supplemental affidavits regarding the latter records by July 22, 2026. Stevens is given leave to file a response by August 5, 2026. The case is set for a

12

telephonic status hearing on August 12, 2026 at 8:55 a.m., using call-in number 650-

479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 8, 2026